**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-62120-CIV-DAMIAN**

**YUSNIEL DIAZ GORINA**,

Petitioner,

v.

**TODD BLANCHE,** *et al.*,

Respondents.
______________________________________/

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** is before this Court on Petitioner, Yusniel Diaz Gorina's ("Petitioner"), Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, filed August 3, 2026. [ECF No. 1 ("Petition")]. Respondents filed a Return to Petition for Writ of Habeas Corpus on August 13, 2026 [ECF No. 7 ("Response")], and Petitioner filed a Reply on August 18, 2026 [ECF No. 8 ("Reply")]. On August 28, 2026, this Court entered an Order Directing Respondents to File a Supplemental Response. [ECF No. 9 ("August 28 Order")]. Respondents filed their Supplemental Response on September 4, 2026 [ECF No. 10 ("Supplemental Response")], and Petitioner filed a supplemental Reply on September 9, 2026 [ECF No. 11 ("Supplemental Reply")].

THE COURT has reviewed the Petition, the Response, the Reply, the Supplemental Response, the Supplemental Reply, the pertinent portions of the record, and the relevant authorities and is otherwise fully advised. For the reasons that follow, the Petition is due to be dismissed without prejudice.

## I. BACKGROUND

Petitioner's immigration background is detailed in the parties' submissions and recounted here as relevant to the issues raised in the Petition.

Petitioner is a native and citizen of Cuba who applied for admission to the United States at the Brownsville, Texas Port of Entry on December 5, 2024, after obtaining a CBP One appointment. Resp. at 1–2; [ECF No. 7-2 ("Notice to Appear")]. That same day, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA"), charging him as an arriving alien with inadmissibility pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I). Resp. at 1–2; NTA. DHS also paroled Petitioner into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). Supp. Resp. at 1–3; [ECF No. 10-1 ("I-94")].

The parties initially disputed the duration of that parole. Respondents first represented that Petitioner's parole was valid until April 24, 2026. *See* Resp. at 2; [ECF No. 7-7]. Petitioner, however, maintained that his parole was originally authorized through December 4, 2026, and that the electronic I-94 was later modified to reflect an April 24, 2026 date. *See* Reply at 2–4. In the Supplemental Response, Respondents confirmed that Petitioner's original parole was authorized for two years, through December 4, 2026, and that Respondents do not contend the parole automatically terminated pursuant to 8 C.F.R. § 212.5(e)(1). *See* Supp. Resp. at 3; I-94. Respondents instead contend that Petitioner's parole was terminated pursuant to 8 C.F.R. § 212.5(e)(2) following Executive Order 14165 and that Petitioner thereafter received a superseding parole date of April 24, 2026. *See* Supp. Resp. at 2–5; ECF Nos. 10-2–10-5.

On July 28, 2026, federal officers encountered Petitioner following a traffic stop in Florida and took him into custody. *See* Resp. at 2; *see also* ECF Nos. 7-1, 7-3, 7-4. On July 30, 2026, Petitioner was transferred to U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations custody, and he remains detained at the Broward Transitional Center pending removal proceedings. *See* Resp. at 2; ECF Nos. 7-5, 7-6. The record reflects that Petitioner has not requested a custody redetermination hearing before the Executive Office for Immigration Review. [ECF No. 10-5 ¶ 17].

Petitioner filed the Petition on August 3, 2026. [ECF No. 1]. He argues that DHS unlawfully terminated his parole without complying with 8 C.F.R. § 212.5(e)(2), that his re-detention violates substantive and procedural due process under the Fifth Amendment, and that DHS's actions violate the Administrative Procedure Act ("APA"). Pet. ¶¶ 44–75. Petitioner requests, among other relief, a declaration that his detention is unlawful, immediate release, an order prohibiting his transfer outside this District while the Petition is pending, and an award of attorney's fees and costs. Pet. at 18–19. In his Reply, Petitioner also argues that, regardless of whether his parole was lawfully terminated, his subsequent apprehension in the interior means that his detention is governed by 8 U.S.C. § 1226(a), rather than the mandatory detention provision in 8 U.S.C. § 1225(b)(2)(A), citing *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, 175 F.4th 1258 (11th Cir. 2026). Reply at 8–10.

Respondents maintain that Petitioner is an arriving alien whose detention is governed by Section 1225(b)(2) and that mandatory detention under that provision does not violate due process. Resp. at 2–6. Respondents also argue that habeas, rather than the APA, supplies the appropriate vehicle for Petitioner's challenge to his detention; that only the

Warden of the Broward Transitional Center is a proper habeas respondent; and that Petitioner is not entitled to attorney's fees under the Equal Access to Justice Act. Resp. at 1 n.1, 6–8. In their Supplemental Response, Respondents further argue that the Petition should be dismissed because Petitioner has not exhausted available administrative remedies by seeking a custody redetermination before an Immigration Judge. *See* Supp. Resp. at 6; ECF No. 10-5 ("Supp. Decl.") ¶ 17]. Petitioner responds that exhaustion does not bar relief because an Immigration Judge cannot remedy DHS's alleged failure to comply with the requirements governing termination of parole and because Respondents themselves initially maintained that an Immigration Judge lacked authority to conduct a bond hearing. Supp. Reply at 7.

## II. LEGAL STANDARD

District courts have the authority to grant writs of *habeas corpus*. 28 U.S.C. § 2241(a). *Habeas corpus* is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* § 2241(c)(3). This Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

The principal issues before this Court are: 1) whether Petitioner's present detention is governed by 8 U.S.C. § 1225(b)(2)(A) or § 1226(a), and 2) if § 1226(a) governs, whether Petitioner's failure to request a custody redetermination before an Immigration Judge precludes habeas relief.

***A. Petitioner's Detention Is Governed By Section 1226(a).***

Petitioner argues that his detention is governed by Section 1226(a) because he was detained in the interior of the United States and was not "seeking admission" when he was taken into custody. Reply at 8–10. Respondents maintain that Petitioner remains an arriving alien subject to mandatory detention under Section 1225(b)(2)(A) because he presented himself at a port of entry, was paroled into the United States, and was restored to his prior status when that parole was terminated. Resp. at 2–5; Supp. Resp. at 2–6.

At the outset, this Court is mindful that *Hernandez Alvarez* is not on all fours because, as Respondents point out, those petitioners were differently situated. The Eleventh Circuit's analysis in that case is, nevertheless, binding on this Court. That is, the question before the Eleventh Circuit in *Hernandez Alvarez*, whether the government was improperly misclassifying aliens as subject to section 1225(b)(2)'s mandatory detention provision when they were actually subject to section 1226(a)'s discretionary detention provisions, was the same as the issue now before this Court.

8 U.S.C. § 1225(b)(2)(A) provides: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." Following the statute's plain text, in order for this statute to apply, the alien must be *both* an "applicant for admission" and "seeking admission" at the time of his or her detention.

In *Hernandez Alvarez*, the Eleventh Circuit interpreted the terms "applicant for admission" and "seeking admission." 175 F.4th at 1267. As the court explained, "[T]he [INA] defines 'applicant for admission' to be a passive condition, and 'deems' an alien to be

an applicant merely by arriving or being present in the United States without having been admitted." *Id.* (citing § 1225(a)). However, the Eleventh Circuit reasoned that "the act of seeking admission constitutes the pursuit of 'lawful entry . . . after inspection and authorization by an immigration officer[.]'" *Id.* at 1269 (quoting § 1101(a)(13)(A)).

Thus, the Eleventh Circuit concluded:

> Putting the pieces together, the plain text of § 1225(b)(2)(A), as supplemented by the definitions chosen by Congress in the INA, yields this command: an alien shall be detained for a § 1229a proceeding if he (1) is arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer. [. . .]
>
> Applying this construction, it seems to us that Petitioners do not fall within the scope of § 1225(b)(2)(A). All agree that Petitioners satisfy the first condition of being "present in the United States without having been admitted," because they were discovered in the interior but were never granted lawful entry. However, on this record, we cannot also say that they were "seeking lawful entry after inspection and authorization by an immigration officer" when they were detained. Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry. They were only present in the country. They were not seeking or pursuing any object, let alone "lawful entry."

*Id.* Respondents are correct that Petitioner's circumstances are not entirely the same as the petitioners in *Hernandez Alvarez* because here, Petitioner had originally presented himself to immigration officials and did not surreptitiously cross the border. Nevertheless, the Eleventh Circuit's opinion in *Hernandez Alvarez* is still binding because the court's opinion addresses when an alien can be held in mandatory detention under section 1225(b)(2).

Here, as in *Hernandez Alvarez*, Respondents' mandatory detention analysis fails on the second prong. There is no dispute that Petitioner is an "applicant for admission" because he is "present in the United States [and] has not been admitted[.]" *See* § 1225(a)(1). But there is

no cogent argument that Petitioner was "seeking lawful entry" when he was detained following the traffic stop, so Petitioner cannot be said to have been "seeking admission" when detained.[1]

The undersigned notes that this Court, like the majority of courts in this Circuit that have addressed this issue post-*Hernandez Alvarez,* has previously concluded that post-parole detainees fall under Section 1226(a), not Section 1225(b)(2). *See Figueroa v. Miramar ICE Field Office*, No. 26-62393-CIV (S.D. Fla. Oct. 19, 2026) (Damian, J.); *Del Valle Vargas v. Warden, Broward Trans. Ctr., et al*, No. 26-62031-CIV (S.D. Fla. Oct. 19, 2026) (Damian, J.); *Pierre v. Miami ICE Field Off. Dir.*, No. 26-14327-CIV, 2026 WL 2725816 (S.D. Fla. Sept. 16, 2026) (Martinez, J.) (treating parolee who was arrested following a traffic stop the same as petitioners in *Hernandez Alvarez* and rejecting respondent's argument that petitioner is subject to mandatory detention as an arriving alien after parole expired); *Khodzhiev v. Warden, Broward Transitional Ctr.*, No. 26-CV-62377, 2026 WL 2640603 (S.D. Fla. Sept. 8, 2026) (Dimitrouleas, J.) (finding that § 1226(a) rather than § 1225(b)(2)(A) governs petitioner's detention when petitioner was initially placed into expedited removal proceedings and subsequently granted parole); *Naumkin v. Warden, Krome North Serv. Processing Ctr.*, 836 F. Supp. 3d 1202, 1210–11 (S.D. Fla. 2026) (Moore, J.) (rejecting respondents' argument that "applicant for admission" and "seeking admission" are synonymous as applied to a former

[1] This Court is also not persuaded that Petitioner is still seeking admission based on a now expired parole. Respondents' position is not in accord with the Eleventh Circuit, which stresses that the "seeking admission" inquiry is directed at the facts as they exist when an alien is detained. *See Hernandez Alvarez*, 175 F.4th at 1269 ("[W]e cannot also say that they were 'seeking lawful entry after inspection and authorization by an immigration officer' when they were detained. Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry.").

parolee who was detained); *Allende-Uton v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-CV-21532, 2026 WL 2254409 (S.D. Fla. June 18, 2026) (Bloom, J.) (finding "no material distinction" between petitioner, who entered the United States as a parolee and was later arrested by immigration authorities in his driveway, and the petitioners in *Hernandez Alvarez*, and noting "[b]y the Eleventh Circuit's binding reasoning, Petitioner was not seeking admission"); *Sekunov v. Warden*, No. 26-cv-60925, 2026 WL 2198856 (S.D. Fla. June 2, 2026) (Bloom, J.) (same); *Sylvaince v. Warden, Miami Fed. Det. Ctr.*, No. 26-cv-23991, 2026 WL 2568522 (S.D. Fla. Aug. 31, 2026) (Ruiz, J.) (ordering bond hearing for Haitian former parolee and concluding that mandatory detention under § 1225(b)(2) was improper); *Hyacinthe v. Warden, N. Fla. Det. Facility*, No. 26-cv-1717-JEP-MCR, 2026 WL 2184969 (M.D. Fla. July 29, 2026) (same); *Eugene v. Warden, Baker Cnty. Corr. Inst.*, No. 26-cv-889-JEP-SJH, 2026 WL 2069935 (M.D. Fla. July 17, 2026) (same).

Respondents argue that upon the expiration of his parole, Petitioner became subject to mandatory detention pursuant to § 1225(b)(2). Respondents cite 8 U.S.C. § 1182(d)(5)(A), which authorizes the DHS Secretary to grant a discretionary and temporary "parole into the United States" to any "alien applying for admission to the United States" on "a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). And "when the purposes of such parole . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Respondents then point to a DHS regulation which provides that upon expiration of parole under 8 U.S.C. §

1182(d)(5)(A), a noncitizen "shall be restored to the status that he or she had at the time of parole." Resp. at 2-5 (citing 8 C.F.R. § 212.5(e)(2)(i)).

While Respondents are correct that the expiration of § 1182(d)(5)(A) parole returns the parolee "to the custody from which he was paroled," courts in this Circuit have consistently held that the expiration of a § 1182 parole does not require treating the alien as if he had never been paroled in the first place. *Zaga Tawil v. Cardinal*, No. 26-22521, 2026 WL 2198539, at *5 n.2 (S.D. Fla. July 30, 2026) (Bloom, J.) (collecting cases); *Rodriguez Valencia v. Noem*, No. 3:26-CV-297-MMH-PDB, 2026 WL 730318, at *6 (M.D. Fla. Mar. 16, 2026) (finding that it would be "absurd" to classify an alien initially detained and paroled under § 1225(b)(2) as "arriving" years after her parole and finding her detained under § 1226). Instead, these courts reason that "[s]ection 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Rodriguez Valencia v. Noem*, No. 26-cv-00297, 2026 WL 730318, at *5 (M.D. Fla. Mar. 16, 2026) (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025)). Accordingly, "based on the border-interior distinction instantiated in § 1225 and § 1226, an alien like Petitioner—who is re-detained in the interior after living in the United States for years—is properly re-detained only under § 1226(a)." *Zaga Tawil*, 2026 WL 2198539, at *5 n.2. This approach is consistent with the Eleventh Circuit's binding decision in *Hernandez Alvarez*.

Thus, this Court finds that 8 U.S.C. § 1226(a) and its implementing regulations govern Petitioner's detention. Therefore, Petitioner is entitled to an individualized bond hearing.

***B. Petitioner's Failure To Exhaust Is Excused As Futile.***

Respondents alternatively argue that Petitioner is not entitled to habeas relief because he did exhaust administrative remedies by requesting a custody redetermination hearing before an Immigration Judge. Supp. Resp. at 6; [ECF No. 10-5 ¶ 17]. The record reflects, and Petitioner does not dispute, that he did not request such a hearing. [ECF No. 10-5 ¶ 17]; Supp. Reply at 7. Petitioner responds that exhaustion should be excused because Respondents themselves maintained that an Immigration Judge lacked authority to conduct a bond hearing. Supp. Reply at 7.

The exhaustion requirement under 8 U.S.C. § 1252(d)(1) "is not jurisdictional," but prudential. *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023). Generally, "exhaustion is not required where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile[.]" *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citations omitted); *see also United States v. Barbieri*, No. 18-20060-CR, 2021 WL 2646604, at *2 (S.D. Fla. June 28, 2021) (Scola, J.) ("The Court recognizes . . . that administrative exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." (citation omitted)).

Here, requiring Petitioner to have requested a custody redetermination before filing the Petition would have required him to pursue a remedy that Respondents maintained was unavailable to him. Respondents classified Petitioner as an arriving alien detained under Section 1225(b)(2)(A). Resp. at 2–5. Based on that classification, Respondents took the position that Immigration Judges "do not have authority to redetermine the custody status" of an arriving alien and that, therefore, Petitioner was "ineligible for bond." *Id.* at 4–5. Yet Respondents now argue that Petitioner cannot obtain habeas relief because he failed to

request from an Immigration Judge the very custody redetermination Respondents maintained the Immigration Judge lacked authority to provide. Supp. Resp. at 6.

Under Respondents' classification of Petitioner and their interpretation of the governing regulations, there was no genuine opportunity for Petitioner to obtain a custody redetermination hearing from an Immigration Judge. Requiring Petitioner nevertheless to request such a hearing would have required pursuit of an administrative remedy that Respondents maintained could not afford him relief. *See Linfors*, 673 F.2d at 334; *Barbieri*, 2021 WL 2646604, at *2 (Scola, J.). Accordingly, Petitioner's failure to request a custody redetermination before filing the Petition is excused as futile.

Because Petitioner's detention is governed by Section 1226(a), and because his failure to exhaust the custody-redetermination process is excused, Petitioner is entitled to an individualized custody redetermination before an Immigration Judge. *See Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *Pierre*, 2026 WL 2725816, at *2 (Martinez, J.); *Khodzhiev*, 2026 WL 2640603, at *1 (Dimitrouleas, J.); *Sylvaince*, 2026 WL 2568522, at *3 (Ruiz, J.); *Allende-Uton*, 2026 WL 2254409, at *3 (Bloom, J.).

In light of this conclusion, this Court need not determine whether DHS lawfully terminated Petitioner's original or subsequent parole under 8 C.F.R. § 212.5(e)(2), whether Petitioner's detention otherwise violates the Fifth Amendment or the Administrative Procedure Act, or whether Petitioner is entitled to attorney's fees and costs. Those issues are unnecessary to resolve at this point because Petitioner is entitled to the individualized custody redetermination he seeks under Section 1226(a), and, as such, Petitioner must now proceed with that process before seeking relief from this Court.

## IV. CONCLUSION

Accordingly, based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Petition [**ECF No. 1**] is **GRANTED IN PART** to the extent that Petitioner requests this Court to direct the Immigration Court to give him a bond hearing. It is further

**ORDERED** that Respondents shall **FORTHWITH** afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioner. The bond hearing must take place no later than **October 29, 2026**. It is further

**ORDERED** that on or before **November 5, 2026**, Petitioner shall file a Joint Status Report informing this Court of whether Petitioner was given a bond hearing, and if so, the outcome of Petitioner's bond hearing and the status of matters relevant to the Petition. Counsel for the Petitioner shall confer with counsel for the Respondents prior to filing the Status Report and must include a certification therein that the Respondents do not object to the representations made regarding the status of this case. It is further

**ORDERED** that the Clerk of Court is **DIRECTED** to **CLOSE** this case for *administrative and statistical purposes only* pending compliance with the instant Order and until further Order of this Court. All pending motions are **DENIED AS MOOT**.

This Court retains jurisdiction to address matters that may arise with respect to the Petition, and either party may file a motion to reopen the case should additional relief be sought relating to the Petition or this Order.

**DONE AND ORDERED** in Chambers at the Southern District of Florida, this 21st day of October, 2026.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**